UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| OTTO CUYLEAR,<br><br>    *Plaintiff*,<br><br>v.<br><br>BROSNAN RISK CONSULTANTS, LTD.<br><br>    *Defendant*. | § § § § § § § § § § § §<br><br>Civil Action No. 3:24-cv-00026<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE:

Plaintiff Otto Cuylear ("Cuylear" or "Plaintiff") comes now and files his Original Complaint, complaining of Brosnan Risk Consultants, Ltd. ("Brosnan" or "Defendant") and would show:

## I.
## OVERVIEW

1. This is a case alleging racial discrimination and retaliation brought pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq.*, and the Texas Labor Code, Chapter 21.

2. Defendant Brosnan is a "full-service protective, investigative, and intelligence firm to a global network of clients."[1]

3. Defendant employed Plaintiff, an African American man, as a Security Guard from approximately August of 2020 to June of 2021 and as a Field Supervisor from approximately June of 2021 to February of 2022 in El Paso, Texas.

---

[1] https://brosnanrisk.com/about/

4. During his employment with Defendant, Cuylear performed his job successfully and without issues until his unjustified termination.

5. In October of 2021, Plaintiff contacted Steve Trimarchi, HR Generalist for Defendant in El Paso, and informed him about his claims of racial discrimination against Damas Lopez and/or David Leslie's discriminatory actions against Plaintiff, Damas Lopez and/or David Leslie's derogatory statements to and/or about Plaintiff, and Damas Lopez and/or David Leslie's intentions to terminate Plaintiff's employment. To Plaintiff's knowledge, nothing was done by Steve Trimarchi, HR, or Defendant.

6. On or about February 10, 2022, while Plaintiff was working out in the field, he was called by Damas Lopez to his office where Damas Lopez and David Leslie were waiting. Plaintiff was then terminated.

7. Plaintiff seeks to recover compensatory and putative damages from Defendant's unlawful acts, and all statutory damages relating to Plaintiff's Federal and Texas state law claims. Plaintiff also seeks injunctive and equitable relief.

## II.
## THE PARTIES

8. Plaintiff Otto Cuylear was an employee of Defendant and at the time his cause of action accrued, worked for Defendant in El Paso, Texas.

9. Defendant, Brosnan Risk Consultants, Ltd. ("Brosnan"), is a New York limited company licensed and business in the State of Texas, and may be served through its registered agent for service of process: **CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.**

## III.
## JURISDICTION & VENUE

10. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it is brought pursuant to Title VII, 42 U.S.C. §§ 2000e, *et seq*.

11. This Court has supplemental jurisdiction over Plaintiff's Texas state-law claim pursuant to 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Defendant because the cause of action arose within this District and Division as a result of Defendant's conduct within this District and Division.

13. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiff's claim occurred within this District and Division.

## IV.
## CONDITIONS PRECEDENT AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. On or about July 14, 2022, Plaintiff filed a charge of discrimination and retaliation against Defendant, Charge Number 453-2022-00970, with the Equal Employment Opportunity Commission ("EEOC").

15. On October 25, 2023, the EEOC issued a Notice of Right to Sue in this matter.

16. Plaintiff filed his Complaint within 90 days of receipt of the Right to Sue issued by the EEOC.

17. All conditions precedent for the maintenance of this action have been met. Plaintiff has exhausted his administrative remedies under State and Federal law.

## V.
## ADDITIONAL FACTS

18. At all times relevant to this suit, Defendant has had more than 15 employees.

19. Plaintiff worked for Defendant in El Paso, Texas, from approximately August 2020 to June 2021 as a Security Guard and as a Field Supervisor from approximately June of 2021 until his termination in February 2022.

20. During his employment with Defendant, Plaintiff was made aware of discriminatory racial comments made by a coworker in the presence of Plaintiff's direct supervisor at Brosnan Security.

21. Brosnan subjected Plaintiff to an adverse employment action (his termination) motivated by discriminatory animus on the part of his supervisor and coworkers.

22. For instance, in March of 2021, while Plaintiff was at lunch with coworkers Damas Lopez and David Leslie, David Leslie said to the waitress "do not give him a menu, he cannot read," gesturing toward Plaintiff. After Plaintiff ordered a salad, David Leslie said "I though you people only ate watermelon and chicken."

23. On or about August 2021, Damas Lopez began his new position as Operations Manager and oversaw Plaintiff's work as a Field Supervisor.

24. On or about September of 2021, Plaintiff was informed by a coworker, Isaac Diaz, that he overheard Damas Lopez and David Leslie on a conference call with Joe Dusk and/or Steve Trimarchi from HR stating they wanted to get rid of Plaintiff.

25. Specifically, Plaintiff's co-worker Isaac Diaz informed Plaintiff that David Leslie had stated "Fuck that Joe [Dusk], let's get rid of that son of a bitch. I hate that n**ger[.]" in the presence of Mr. Damas Lopez.

26. Additionally, Isaac Diaz informed Plaintiff that Damas Lopez and/or David Leslie discussed terminating him for subjective reasons such as poor performance or having a bad attitude and, that Diaz heard Lopez and Leslie refer to Plaintiff using the N-word multiple times.

27. After learning of these comments, Plaintiff reported them to Joe Dusk and/or Steve Trimarchi in approximately October of 2021; however, no action was taken, nor any investigation performed to Plaintiff's knowledge.

28. After reporting his concerns, Plaintiff was subjected to excessive performance monitoring and excessively disciplined for a common mistake by Damas Lopez; monitoring and discipline that no other similarly situated white colleague were subject to due to his race.

29. On or about December 2021, Defendant began requiring Field Supervisors to complete Daily Activity Reports.

30. On or about December 17, 2021, Defendant's Field Supervisors, including Plaintiff, were required to attend Daily Activity Reports training.

31. On or about December 20, 2021—three (3) days after he implementation of and training on Daily Activity Reports—Damas Lopez issued a written warning allegedly based upon issues with Plaintiff's Daily Activity Reports submitted for December 17, 2021, to December 19, 2021—the first three (3) Daily Activity Reports submitted after being implemented.

32. On or about December 21, 2021—four (4) days after the implementation of and training on Daily Activity Reports—Damas Lopez called a meeting with Plaintiff to discuss his Daily Activity Reports for December 19, 2021, and December 20, 2021.

33. Plaintiff was provided a written warning by Damas Lopez for allegedly preparing reports that were not written correctly.

34. On or about December 28, 2021, Damas Lopez issued a second written warning to Plaintiff. The basis identified on the second written warning was Plaintiff's alleged refusal to correct or amend a Daily Activity Report. However, the written warning also states that, on that same day, after Plaintiff allegedly submitted a Daily Activity Report without his name, Plaintiff resubmitted the report at least three (3) times to include his name and correct alleged errors.

35. Notably, despite Defendant's allegations that Plaintiff's performance was deficient, Defendant required Plaintiff to train new employees on job duties and requirements of the role.

36. On or about February 10, 2022, while Plaintiff was working out in the field, he was called by Damas Lopez to his office where Damas Lopez and David Leslie were waiting. Plaintiff was then terminated. No reason for the termination was given to Plaintiff at the time.

37. Defendant terminated Plaintiff and, took other adverse action as described above because of Plaintiff's race, and/or because he opposed racial discrimination in the workplace.

## VI.
## CAUSES OF ACTION

### COUNT ONE
### (Racial Discrimination)

38. All previous paragraphs are incorporated as though fully set forth herein.

39. During his employment with Defendant, Plaintiff was subject to unlawful racial discrimination. 42 U.S.C. § 2000e, *et seq*.

40. Plaintiff was treated differently than his similarly situated colleagues with respect to the terms and conditions of his employment because Defendant subjected him to excessive performance monitoring when compared to his similarly situated white and non-African American counter parts.

41. Defendant also subjected Plaintiff to an adverse employment action when it terminated him on the basis of his race.

42. Defendant either took adverse action as described above against Plaintiff due to his race and/or adopted the racially discriminatory position of its employees who complained about Plaintiff due to their bias and/or racial animus towards Plaintiff as described above.

43. At all times subject to this complaint, Defendant has had more than 15 employees.

44. Plaintiff was subject to racial discrimination during his employment with Defendant to include a racially discriminatory performance monitoring and termination.

45. Plaintiff was harmed by Defendant's decision to terminate him.

46. Defendant's practices were not justified for any legitimate non-discriminatory reason.

47. Alternatively, Defendant's reason(s) for the adverse actions identified here is false and is instead a pretext for racial discrimination.

48. As stated, all jurisdictional prerequisites for the filing of this Complaint have been met.

## COUNT TWO
### (Alleging Violation of Texas Labor Code)

49. All previous paragraphs are incorporated as though fully set forth herein.

50. Defendant was an employer and Plaintiff was an employee as those terms are defined under Chapter 21 of the Texas Labor Code.

51. At all times subject to this complaint, Defendant has had more than 15 employees.

52. Defendant unlawfully adopted the racially discriminatory assessment of Plaintiff by Plaintiff co-employees and, took adverse action on the basis of said assessment.

53. As a direct result of Plaintiff's race, Defendant took adverse action against him, including termination.

54. There is direct evidence of racial discrimination in this case.

55. Alternatively, Defendant's reason(s) for the adverse actions identified here is false and is instead a pretext for racial discrimination.

56. Plaintiff was harmed by Defendant's decision to terminate him.

57. Defendant's practices were not justified for any legitimate non-discriminatory reason.

58. As stated, all jurisdictional prerequisites for the filing of this Complaint have been met.

## COUNT THREE
### (Retaliation for Opposing Racial Discrimination)

59. All previous paragraphs are incorporated as though fully set forth herein.

60. During his employment with Defendant, Plaintiff opposed a discriminatory act or practice made unlawful by 42 U.S.C. § 2000e *et seq*.

61. Specifically, Plaintiff opposed racial discrimination in the workplace.

62. As described above, after Plaintiff complained to Defendant about the unlawful racial discrimination, Defendant retaliated against him and ultimately terminated him in violation of 42 U.S.C. § 2000e *et seq.*

63. Plaintiff was retaliated against because he opposed an act or practice made unlawful by the applicable laws and thus, Plaintiff was entitled to the anti-retaliation protections of 42 U.S.C. § 2000e *et seq.*

64. Because of Defendant's retaliation, Plaintiff was damaged and continues to be damaged.

65. Plaintiff suffered an adverse, tangible employment action including termination.

66. It is unlawful for an employer to retaliate against an employee for such reasons.

67. Defendant's reason(s) for the discharge is false and is instead a pretext for retaliation.

68. As stated above, Plaintiff's actions, including reporting Defendant's unlawful racial discrimination, were the "but for" cause of his termination.

69. As a result of Defendant's discrimination, Plaintiff has suffered loss of wages and benefits, both in the past and in the future, as well as emotional pain and mental anguish in the past, which in all probability he will continue to experience in the future.

## COUNT FOUR
### (Alleging Violation of the Texas Labor Code)

70. All previous paragraphs are incorporated as though fully set forth herein.

71. Defendant was an employer and Plaintiff was an employee as those terms are defined under Chapter 21 of the Texas Labor Code.

72. At all times subject to this complaint, Defendant has had more than 15 employees.

73. Plaintiff opposed a discriminatory and unlawful employment practice of Defendant, namely racial discrimination.

74. As a direct result of Plaintiff's opposition to racial discrimination, Defendant retaliated against Plaintiff by terminating his employment.

75. Plaintiff was harmed by Defendant's termination.

76. Defendant's practices were not justified for any reason, including on the basis of business necessity.

77. As stated, all jurisdictional prerequisites for the filing of this Complaint have been met.

## VII.
## DAMAGES

78. As a direct and proximate result of the wrongful acts and/or omissions of Defendant, Plaintiff has suffered damages, including but not limited to past and future:

a. Pecuniary loss;

b. Lost wages, salaries, and/or other benefits;

c. Lost earning capacity;

d. Loss of benefits;

e. Loss of use

f. Back pay;

g. Interest on back pay;

h. Front pay;

i. Out of pocket expenses;

j. Mental anguish damages;

k. Emotional pain and suffering;

l. Loss of enjoyment of life;

m. Inconvenience;

n. Other non-pecuniary loss;

o. Compensatory damages;

p. Actual monetary losses;

q. Liquidated and/or statutory damages;

r. Pre and post judgment interest;

s. Other interest allowed by law;

t. Costs of court;

u. Legal expenses, expert fees, and attorneys' fees pursuant to Title VII (including but not limited to 42 U.S.C. § 2000e-5(k))

# VIII.
# INJUNCTIVE AND EQUITABLE RELIEF

79. Plaintiff is entitled to injunctive and equitable relief pursuant to law. Plaintiff requests the court provide equitable and injunctive relief including but not limited to: front pay, an injunction prohibiting Defendant from engaging in the unlawful employment practices alleged in this complaint, reinstatement, restoration of benefits, make-whole remedies and other equitable relief

# XI.
# PRAYER

Plaintiff prays that Defendant be cited to appear and answer and that upon final hearing he recover judgment against the Defendant for the following:

a. All actual damages resulting from Defendant's acts and/or omissions;

b. All statutory and/or liquidated damages allowed by law;

c. Equitable relief including, but not limited to, injunctive relief;

d. Legal expenses, expert fees and attorney's fees through trial, appeal and review by the Supreme Court of the United States;

e. Costs of court;

f. Pre and post judgment interest at the maximum rate allowed by law; and

g. For an Order granting such other and further relief as may be necessary and appropriate.

Date: January 23, 2024    Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By: */s/ Clif Alexander*
    **Clif Alexander**
    Texas Bar No. 24064805
    clif@a2xlaw.com
    **Locke Henry**
    Texas Bar No. 24118408
    Locke@a2xlaw.com
    101 N. Shoreline Blvd, Suite 610
    Corpus Christi, Texas 78401
    Telephone: (361) 452-1279
    Facsimile: (361) 452-1284

***Attorneys in Charge for Plaintiff***